**Denise WOODS, Plaintiff–Appellant,**

**v.**

**NEWBURGH ENLARGED CITY SCHOOL DISTRICT, Dr. Richard Nicholas Johns, Defendants–Appellees.**

No. 07–0610–cv.

United States Court of Appeals, Second Circuit.

Aug. 12, 2008.

758

Michael H. Sussman, Sussman & Watkins, Goshen, NY, for Appellant.

John Diaconis, Rutherford & Christie, LLP, New York, NY, for Appellees.

PRESENT: Hon. REENA RAGGI, Hon. RICHARD C. WESLEY, and Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

1. The district court also awarded defendants summary judgment on Woods's claims pursuant to 42 U.S.C. § 1981a and § 1983 as well as the New York Human Rights Law, N.Y.

## SUMMARY ORDER

Plaintiff Denise Woods, an African American formerly employed by defendant Newburgh Enlarged City School District as a probationary assistant principal, appeals an award of summary judgment in favor of her past employer and school-district superintendent Dr. Richard Nicholas Johns (collectively, "defendants"). Woods asserts that summary judgment was unwarranted because she had demonstrated material issues of disputed fact on Title VII claims of (1) a racially hostile work environment, (2) racially discriminatory termination, and (3) unlawful retaliation. *See* 42 U.S.C. § 2000e *et seq.*[1]

At the outset we note that, even though the district court's 49–page summary judgment opinion reviews and analyzes the evidence with characteristic thoroughness, we are obliged to undertake *de novo* review, and we will affirm only if the record, viewed in the light most favorable to the non-moving party, reveals no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 245 (2d Cir.2008). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

### 1. *Racially Hostile Work Environment*

Woods submits that the district court erred in concluding that she failed to adduce evidence sufficient to permit a fact finder to infer that racial animus informed the hostility she encountered in her work environment. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d

Exec. Law § 296. Because Woods does not pursue these claims on appeal, we deem them waived. *See Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir.2004).

426, 440 (2d Cir.1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). On *de novo* review, we reach the same conclusion as the district court.

In essence, Woods asserts a hostile work environment based on two circumstances: disrespectful comments and insubordinate actions by teachers under her supervision, and the failure of Woods's superiors to discipline these teachers. Woods submits that an inference of racial animus in these circumstances could be inferred from a number of facts: (a) when she assumed administrative responsibilities, the school's principal told her "there may be some people who will not accept you because of the color of your skin," (b) all of the teachers who repeatedly showed her disrespect were Caucasian, (c) a supervisor told Woods that certain teachers had complained that Woods "went to the NAACP on them," and (d) that same supervisor told Woods that she had previously "faced racist conduct from teachers."

■ As the district court correctly noted, the last two facts cannot be considered because they relied on hearsay. *See* Fed.R.Civ.P. 56(e)(1) (stating that affidavit opposing summary judgment "must be made on personal knowledge, set[ting] out facts that would be admissible in evidence"); *Feingold v. New York,* 366 F.3d 138, 155 n. 17 (2d Cir.2004) ("In reviewing the district court's grant of summary judgment, ... we may only consider admissible testimony."); *see also Patterson v. County of Oneida,* 375 F.3d 206, 222 (2d Cir.2004) (finding that hearsay evidence regarding another person's tolerance for racial behavior was "not competent evidence in opposition to summary judgment"). As for the first fact, the principal's statement as to possible future discrimination by unspecified persons might have provided a basis for further discovery as to the facts

informing his prediction to see if a link might be inferred from those facts to the conduct subsequently complained of by Woods. But, by itself, the principal's conclusory prediction as to the possibility of racial bias is insufficient to permit an inference that such bias did, in fact, inform any particular conduct experienced by Woods, much less "permeat[e]" her work environment. *See Williams v. County of Westchester,* 171 F.3d 98, 100 (2d Cir. 1999); *see also Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008) ("Even in the discrimination context, ... a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

Woods mistakenly relies on *Alfano v. Costello,* 294 F.3d 365 (2d Cir.2002), to support an argument that race-neutral incidents can be sufficient, by themselves, to permit an inference of discrimination. *Alfano*'s observation that "incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination" presumed evidence of "multiple acts of harassment, some overtly sexual and some not." *Id.* at 375. It is Woods's failure to point to evidence of any act infected by racial bias that compels summary judgment in favor of defendants on her hostile-work-environment claim.

### 2. *Discriminatory Termination*

■ Woods asserts that the district court erred in concluding that, under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), she failed to adduce evidence sufficient to satisfy the fourth factor of a *prima facie* case, *i.e.,* discharge under circumstances giving rise to an inference of racial discrimination. *See Patterson v. County of Oneida,* 375 F.3d at 221. Woods submits that such an inference could be drawn

from the fact that, while she was terminated for violating the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, other employees who violated that statute were not. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000) (holding that inference of discrimination could be drawn from evidence that plaintiff was treated "less favorably than a similarly situated employee outside [her] protected group"). Woods's argument fails because her case does not bear a sufficient resemblance to her comparators' to permit an inference of discrimination. *See id.* (holding that, while plaintiff need not show "identical" circumstances, "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases" is necessary to support an inference of discrimination).

We recognize that the similarity of comparators' situations generally presents a question of fact for the jury. *Id.* This, however, is a rare case where the issue can be resolved as a matter of law. At the outset, we note that one of Woods's two comparators is African American. Thus, as Woods herself appears to concede, this individual does not fall "outside" Woods's protected group. *Id.* To the extent Woods's other comparator received only a letter of reprimand for a FERPA violation whereas Woods was terminated, we note that the comparator held tenure whereas Woods's employment was probationary. While this distinction does not preclude an inference of discrimination in every case, it does so here because Woods's African-American "comparator," who also held tenure, received a similar letter of reprimand for the identical FERPA violation. Under these circumstances, Woods's proposed comparisons cannot support an inference of racial bias. *Cf. Feingold v. New York*, 366 F.3d at 153 (recognizing that permanent and probationary employees are not similarly situated with respect to conditions under which they could be terminat-

ed; nevertheless, where evidence showed members of one race "were not disciplined *at all*" for conduct at issue, discriminatory motive could be inferred).

We further note that the tenured employees' FERPA violations were remarkably similar to each other but distinct from Woods. The tenured employees transmitted student grades on postcards, a practice that failed to ensure the confidentiality required by statute but that enjoyed the seeming tacit approval of longstanding district practice. By contrast, Woods violated FERPA by directing school staff members to copy large volumes of material, including student records afforded statutory confidentiality, in what can be viewed most favorably to her as a mistaken understanding of the scope of a superior's directive to gather information relevant to her upcoming job evaluation.

■ Defendants submit that, even if Woods had carried her *prima facie* burden, the poor judgment reflected in her copying action (which was further reflected in Woods's decision to bring the copied materials home), establishes a legitimate, non-discriminatory reason for termination that Woods failed to rebut. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Patterson v. County of Oneida*, 375 F.3d at 221. Like the district court, we agree. While Woods's claimed misunderstanding of her superior's directive helps explain her exercise of poor judgment, it does not demonstrate the falsity of this non-discriminatory reason for her discharge and the probability that racial bias was the real reason for her termination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000) (holding that, to demonstrate pretext, plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and

that more likely than not [discrimination] was the real reason for the [employment action]" (internal quotation marks omitted) (alterations in original)).

### 3. *Retaliation*

To the extent Woods asserts that her termination was in retaliation for her complaints of discrimination, summary judgment was appropriately entered in favor of defendants in light of Woods's failure to adduce evidence indicating the falsity of defendants' proffered non-discriminatory rationale for her discharge. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 130–31 (2d Cir.1996) (holding summary judgment appropriately awarded to employer where Title VII plaintiff "put forth no evidence to show that defendant's asserted reasons for the retaliation were pretextual").

Accordingly, the district court's February 8, 2007 judgment is hereby AFFIRMED.